# Illinois Official Reports

## Appellate Court

---

### *One Fish Two Fish, LLC v. Struif*, 2021 IL App (1st) 191441

---

| | |
|---|---|
| Appellate Court Caption | ONE FISH TWO FISH, LLC; MK-II LLC; and MICHAEL KORNICK, Plaintiffs and Counterdefendants, v. CARYN STRUIF, f/k/a Caryn M. Bobrowski, Defendant, Counterplaintiff, and Third-Party Plaintiff-Appellee and Cross-Appellant (One Fish Two Fish, LLC, and Michael Kornick, Plaintiffs and Counterdefendants-Appellants and Cross-Appellees; Lisa Koch, Third-Party Defendant and Cross-Appellee). |
| District & No. | First District, Second Division<br>No. 1-19-1441 |
| Filed | March 16, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CH-2517; the Hon. Diane J. Larsen, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded. |
| Counsel on Appeal | Peter A. Cantwell and Daniel L. Chapman, of Cantwell & Cantwell, of Chicago, for cross-appellant.<br><br>David H. Latham, of ASG Law LLC, of Chicago, for cross-appellees. |

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1        Counterplaintiff, third-party plaintiff, and cross-appellant Caryn Struif appeals from several orders entered by the trial court in relation to her claims against counterdefendants One Fish Two Fish, LLC (OFTF), and Michael Kornick and third-party defendant Lisa Koch. Struif contends that the trial court erred in concluding that her claims against Kornick were barred by the one-refiling rule under section 13-217 of the Code of Civil Procedure (Code) (735 ILCS 5/13-217 (West 1994)),[1] her claims against Koch were barred by the applicable statute of limitations, and her claimed costs must be reduced. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                 BACKGROUND
¶ 3        This case arises out of a failed business relationship between Struif and Kornick. In 1998, Kornick, a chef, opened mk restaurant in Chicago, with Struif acting as general manager. MK-I, LLC, owned mk restaurant. In turn, OFTF owned a membership interest in and was the managing member of MK-I. Kornick owned an 81.8% interest in OFTF, while Struif owned the remaining 18.2%. Kornick was the sole manager of OFTF. MK-I made distributions of revenue from mk restaurant to OFTF, which, in turn, distributed those monies to Kornick and Struif.

¶ 4        On July 9, 2002, Kornick terminated Struif's employment. On July 12, 2002, Kornick sent a letter to Struif, indicating his intent to exercise his option to purchase Struif's interest in OFTF pursuant to the OFTF operating agreement. On December 13, 2002, Struif responded to Kornick, demanding $181,612.68 for her interest. On January 27, 2003, Kornick sent Struif 70% of her demanded amount, which reflected a deduction under the OFTF operating agreement because Struif was employed for less than five years. Struif rejected this amount.

¶ 5        In February 2003, plaintiffs OFTF, MK-II, and Kornick filed their complaint in this case (State Case I). In it, they brought claims for specific performance, declaratory judgment, and breach of fiduciary duty. These claims arose out of the dispute over Kornick's attempted purchase of Struif's interest in OFTF and a separate dispute regarding Struif's involvement in a second restaurant venture, MK North.

¶ 6        In October 2003, Struif filed a nine-count complaint in the federal district court. In addition to alleging facts related to her employment at mk restaurant and membership in OFTF, Struif also alleged that in 2001 she and Kornick worked together to plan the opening of a second restaurant, MK North, in Northfield, Illinois. Similar to the ownership and management structure of mk restaurant, MK North was to be owned by MK-II. Red Fish, Blue Fish, LLC

---

[1] This version of section 13-217 of the Code is currently in effect because it predates the amendments of Public Act 89-7, § 15 (eff. Mar. 9, 1995), which was found to be unconstitutional in its entirety in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997).

(RFBF), was to be a member in and managing member of MK-II. In return for overseeing the development, management, and operation of MK North, Kornick offered Struif a 14.286% ownership interest in RFBF and an additional $25,000 in annual compensation. Struif accepted this offer. Struif alleged that, despite this agreement and despite Struif fulfilling her duties under the agreement, she was not given her ownership interest in RFBF or paid any additional compensation.

¶ 7    In count I of the federal complaint, Struif alleged that Kornick, as an agent of MK-I, OFTF, MK-II, and RFBF, created a hostile work environment for Struif and terminated her employment because of her sex and intent to have a family, in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (2000)) and the Civil Rights Act of 1991 (42 U.S.C. § 1981a (2000)). In count II, Struif alleged that Kornick breached his fiduciary duty to her by failing to make distributions to her from OFTF, terminating her employment without cause and in bad faith, and reducing the cash income of OFTF in order to reduce his purchase price of Struif's interest in OFTF. Count III sought from Kornick an accounting of OFTF's and RFBF's income and profits. Count IV sought a declaration of the value of Struif's interest in OFTF. Count V alleged breach of contract against MK-I for failing to pay Struif compensation for her work at MK North. Count VI against MK-I[2] sought recovery of unpaid wages for her work at MK North under the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2000)). In counts VII and VIII, under theories of *quantum meruit* and unjust enrichment, Struif sought payment from MK-II and RFBF for work she performed at MK North. Finally, in count IX, Struif sought specific performance and an accounting from Kornick, MK-II, and RFBF, based on her allegations that she had not been given her promised ownership interest in RFBF, her compensation for work performed at MK North, or income distributions from RFBF.

¶ 8    On April 1, 2004, Struif filed a notice of voluntary dismissal of her state-law claims against Kornick in the federal case. In response, on the same day, the federal court entered a minute order dismissing Kornick. The order did not state whether it was with or without prejudice. A little over a month later, on May 5, 2004, in a separate order, the federal court noted that a motion to dismiss previously filed by Kornick was rendered moot by Struif's voluntary dismissal of her claims against Kornick. The federal court then stated, "Accordingly, [Struif's] claims against defendant Kornick are dismissed in their entirety, with prejudice, and counts II, III, and IV, which were directed solely towards defendant Kornick, are dismissed in their entirety, with prejudice."

¶ 9    On September 7, 2004, OFTF, MK-II, and Kornick voluntarily dismissed their claims in the present case. The trial court permitted Struif to refile her affirmative defenses in this case as counterclaims. Over the following two years, Struif filed several versions of her counterclaim, which were all dismissed.

¶ 10    In September 2006, Struif filed her fourth amended counterclaim, which contained nine counts against Kornick, OFTF, MK-I, RFBF, and MK-II, based on essentially the same facts as alleged in her federal complaint. In count I against Kornick, Struif alleged that Kornick breached his fiduciary duty by failing to make distributions of income from MK-I to OFTF and from OFTF to Struif, terminating Struif's employment without cause and in bad faith, and

---

[2]It is unclear why Struif sought recovery from MK-I in counts V and VI for unpaid compensation for her work at MK North, rather than MK-II, the owner of MK North.

- 3 -

artificially reducing the purchase price of Struif's interest in OFTF. In count II against Kornick, Struif alleged that Kornick breached his fiduciary duty in failing to make distributions from MK-II to RFBF and from RFBF to Struif, failing to transfer a 14.286% ownership interest in RFBF to Struif, and failing to ensure Struif received her share of profits from MK North. Count III sought a declaratory judgment of the value of Struif's interest in OFTF. Count IV sought an accounting of the income and profits of OFTF and RFBF. Count V alleged that MK-II, RFBF, and Kornick were unjustly enriched by the services performed by Struif. Count VI sought specific performance and an accounting from MK-II, RFBF, and Kornick, namely, that they transfer a 14.286% ownership interest in RFBF to Struif, that they account for all amounts owed to Struif as income distributions pursuant to that ownership interest, and that they pay Struif reasonable compensation for her services. In count VII, Struif alleged that MK-II, RFBF, and Kornick breached their agreement with her when they failed to pay her the agreed-upon additional compensation for the work she performed in relation to MK North. Count VIII also sought recovery of her unpaid MK North compensation, just under the Illinois Wage Payment and Collection Act. Finally, in count IX, under a theory of *quantum meruit*, Struif sought payment for her services from MK-II, RFBF, and Kornick.

¶ 11    Kornick, MK-I, OFTF, MK-II, and RFBF filed a motion to strike Struif's fourth amended counterclaim. First, they argued that Struif's claims against Kornick were barred by *res judicata*, because they were previously dismissed with prejudice by the federal court. They also argued that Struif's claims against Kornick in counts I and III were barred by *res judicata* and collateral estoppel based on substantive determinations made by the federal court. In addition, they argued that Struif's fourth amended counterclaim did not comply with the trial court's order dismissing Struif's third amended counterclaim, in that the fourth amended counterclaim repleaded a number of claims that had been previously dismissed.

¶ 12    On March 21, 2007, the trial court granted the motion to strike with respect to the claims against Kornick, finding that they were barred by the doctrine of *res judicata*. More specifically, the trial court concluded that all the claims brought against Kornick in Struif's fourth amended counterclaim were identical to or arose out of the same operative facts as the claims Struif brought against Kornick in the federal case and, thus, the federal court's May 5, 2004, dismissal with prejudice barred any such claims in the present case. The trial court noted that its decision did not affect Struif's claims against MK-I, OFTF, MK-II, and RFBF.

¶ 13    Two months later, in May 2007, Struif filed a motion in the federal court, seeking to amend the May 5, 2004, order. In that motion, Struif argued that, because her voluntary dismissal of her claims against Kornick in the federal case was done under Federal Rule of Civil Procedure 41(a)(1), which allows for a voluntary dismissal of claims without prejudice, the federal court lacked the jurisdiction to dismiss her claims with prejudice. Thus, according to Struif, the federal court's order was void in that respect. In addition, Struif argued that the federal court had dismissed her claims against Kornick on April 1, 2004, and, accordingly, lacked jurisdiction to enter a second dismissal order on May 5, 2004.

¶ 14    On July 2, 2007, while Struif's motion to amend the May 5, 2004, order was still pending in the federal court, Struif filed a second state court case (State Case II) against MK-I, RFBF, Kornick, and Lisa Koch. The claims brought by Struif in State Case II were similar to those brought by her in State Case I and the federal case.

¶ 15    Shortly thereafter, on July 19, 2007, the federal court granted Struif's motion and amended the May 5, 2004, order to read "without prejudice" instead of "with prejudice."

¶ 16        On March 28, 2008, Struif voluntarily dismissed her claims in State Case II.

¶ 17        On May 13, 2008, in the present case, Struif filed a motion to reconsider the dismissal of her claims against Kornick. Struif argued that the federal court's May 5, 2004, order dismissing her claims against Kornick with prejudice was void and that the federal court corrected it to reflect a dismissal without prejudice. Because the May 5, 2004, order was void, Struif argued, it could not be the basis of a *res judicata* finding. Accordingly, Struif requested that the trial court vacate its March 21, 2007, order and reinstate her claims against Kornick.

¶ 18        In response, Kornick, OFTF, and MK-II argued, among other things, that under section 13-217 of the Code, Struif was permitted only one refiling of her voluntarily dismissed claims and that she had refiled hers twice: once in the present case and again in State Case II. Accordingly, they argued, even if her claims against Kornick were reinstated, they would have to be dismissed again.

¶ 19        Struif argued in reply that the reinstatement of her claims against Kornick in the present case would not be an additional filing but instead would simply be a reinstatement of the claims she had filed prior to instituting State Case II.

¶ 20        On August 20, 2008, the trial court vacated its dismissal of Struif's claims against Kornick on the basis of *res judicata*, because the federal court's May 5, 2004, order, purporting to be a dismissal of the federal claims against Kornick with prejudice, was void. The trial court went on, however, to deny Struif's request that her claims against Kornick be reinstated, concluding that Struif used her one opportunity to refile her voluntarily dismissed claims under section 13-217 of the Code when she filed State Case II. Struif filed a motion to reconsider this order, which the trial court denied.

¶ 21        In November 2011, Struif was granted leave to file her fifth amended counterclaim. Although she was precluded from naming Kornick as a counterdefendant, the trial court granted her leave to add third-party claims against Koch.

¶ 22        Despite the trial court's directives, the fifth amended counterclaim that Struif filed contained claims against Kornick. In fact, Kornick was named as a defendant in 11 of the 13 counts. These claims were essentially the same as those alleged in previous versions of Struif's counterclaims. In addition to these claims directed against Kornick, Struif alleged that in 2002 Kornick and OFTF, in violation of the OFTF operating agreement, unilaterally transferred Struif's ownership interest in OFTF and its resulting income to Koch, Kornick's wife. Struif also alleged that, instead of transferring to her the promised 14.286% interest in RFBF, Kornick and RFBF transferred that interest and its resulting income to Koch. Based on these additional factual allegations, Struif brought claims against Koch alleging breach of the OFTF operating agreement, specific performance and accounting, unjust enrichment, and conversion/ constructive trust.

¶ 23        On motions filed by Kornick, OFTF, MK-I, RFBF, MK-II, and Koch, the trial court dismissed many of the claims contained in the fifth amended counterclaim. The trial court dismissed the claims against MK-I and RFBF on the basis that they were barred by the one-refiling rule under section 13-217 of the Code, because the claims arose out of the same operative facts as those alleged in the federal case and State Case II. The trial court also dismissed all the claims against Kornick with prejudice, on the basis that it had denied Struif leave to include claims against Kornick in the fifth amended counterclaim. As for the claims against Koch, the trial court concluded that they were barred by the statute of limitations,

because Struif knew or should have known of those claims at the time she filed her federal case in 2003. In the end, only a few of the original claims against OFTF and MK-II remained.

¶ 24　　Struif filed additional amended pleadings before the matter finally proceeded to a bench trial on five counts from her seventh amended counterclaim, namely, declaratory judgment and accounting claims against OFTF and unjust enrichment, Illinois Wage Payment and Collection Act, and *quantum meruit* claims against MK-II. After hearing the evidence, the trial court concluded that Struif was entitled to declaratory relief against OFTF. Specifically, the trial court held that OFTF could not continue to allow Struif's interest in OFTF to be transferred until she was offered compensation for it by Kornick in the amount of $127,128.64 plus interest. If Kornick made no such offer within 30 days, then OFTF was required to revest Struif with her interest and pay her any distributions missed since January 2003. In addition, because Struif still held her ownership interest in OFTF in August 2002, she was entitled to her share of the distribution made that month—$30,030 plus prejudgment interest. Struif was denied relief on her other claims. Finally, the trial court granted Struif leave to file a petition for costs under section 2-701(e) of the Code (735 ILCS 5/2-701(e) (West 2016)).

¶ 25　　Shortly thereafter, Struif filed her petition for costs in which she sought total costs in the amount of $82,092.54. In the supporting affidavit, Struif's counsel broke down the costs as follows:

| | |
|---|---|
| Long distance telephone expense | $7.87 |
| Postage/proof of service expense | $125.14 |
| Photocopying expense | $13,856.60 |
| Outside photocopy services | $148.44 |
| Telefax expense | $287.90 |
| Westlaw research | $58,787.23 |
| Court reporters-appearance and transcripts | $8144.86 |
| Clerk of the Circuit Court of Cook County | $393.10 |
| Sheriff of Cook County | $266.40 |
| Subpoena fees | $75 |

In response, OFTF argued that recoverable costs included only court costs, not long-distance telephone, Westlaw research, photocopying, or fax fees. OFTF also argued that Struif failed to justify her court reporter, sheriff, and subpoena fees and that she did not submit any documentary evidence in support of her claimed fees.

¶ 26　　At an initial hearing on Struif's petition, the parties argued over whether some of the claimed fees were related to the federal case. The trial court directed counsel for OFTF to provide Struif's counsel with a list of specific charges that OFTF claimed were improper. In turn, Struif's counsel was to provide OFTF's counsel with documentary evidence in support of those charges. That documentary evidence was then to be filed with the court under seal, and the matter was set for another hearing. The record does not contain OFTF's specific objections, Struif's responses or supporting evidence, or a transcript of the subsequent hearing on Struif's petition for costs.

¶ 27　　On September 24, 2018, the trial court entered its final judgment order, which incorporated its trial decision and ruled on Struif's petition for costs. In that order, the trial court awarded Struif costs totaling $69,369.14. The trial court noted that the reductions to the costs were in

response to challenges by OFTF to specific line items and were made for reasons stated on the record.

¶ 28    Both Struif and OFTF filed posttrial motions, which the trial court denied. OFTF appealed, and Struif cross-appealed. OFTF later voluntarily dismissed its appeal, leaving only Struif's cross-appeal for our consideration.

¶ 29                                ANALYSIS

¶ 30    On appeal, Struif argues that the trial court erred in refusing to reinstate her claims against Kornick on the basis that they were precluded by the one refiling rule under section 13-217 of the Code, dismissing her claims against Koch as time-barred, and reducing her claimed costs where OFTF did not file a counteraffidavit. We address each of these contentions in turn.

¶ 31                Reinstatement of Claims Against Kornick

¶ 32    Struif first argues that her claims against Kornick should have been reinstated because (1) Kornick engaged in a deliberate scheme to have the claims against him dismissed by taking advantage of the scrivener's error in the federal court's May 5, 2004, order and (2) the reinstatement of her erroneously dismissed claims in the present case did not constitute an impermissible refiling under section 13-217 of the Code. Because we agree that reinstatement of Struif's claims against Kornick was not barred by section 13-217 of the Code, we need not address Struif's contention that Kornick acted with ill intent in pursuing the dismissal of those claims.

¶ 33    Section 13-217 of the Code (735 ILCS 5/13-217 (West 1994)) provides in relevant part:

> "In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if *** the action is voluntarily dismissed by the plaintiff, *** then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff *** may commence a new action within one year or within the remaining period of limitation, whichever is greater, *** after the action is voluntarily dismissed by the plaintiff ***."

A plaintiff who voluntarily dismisses his case is entitled to only one refiling of the same cause of action under section 13-217. *Flesner v. Youngs Development Co.*, 145 Ill. 2d 252, 254 (1991). In determining whether a claim is the same cause of action, we look to *res judicata* principles, which consider claims to be the same cause of action if they arise from a single group of operative facts. *Schrager v. Grossman*, 321 Ill. App. 3d 750, 755 (2000). "Although a single group of operative facts may give rise to the assertion of more than one kind of relief or more than one theory of recovery, assertions of different kinds or theories of relief arising out of a single group of operative facts constitute but a single cause of action." *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490-91 (1993).

¶ 34    Here, there is no dispute that Struif's claims against Kornick in the federal case and the two state cases arise out of a single group of operative facts. There is also no dispute that the May 5, 2004, federal court order erroneously stated that Struif's claims against Kornick in the federal case were dismissed with prejudice and that the trial court concluded that Struif's claims against Kornick in the present case were barred by *res judicata* based on the erroneous May 5, 2004, federal court order. Thus, the sole question presented to us is whether, upon vacating the *res judicata* dismissal of Struif's claims against Kornick, the reinstatement of

those claims would constitute the "commence[ment of] a new action" under section 13-217. We conclude that it does not, because Struif was not seeking to refile or reinitiate her claims anew but instead was simply attempting to correct the erroneous, involuntary dismissal of her claims in the present case.

¶ 35 Struif voluntarily dismissed her federal case claims against Kornick in April 2004. In September 2004, she refiled those claims as counterclaims in the present case, which constituted her one refiling permitted by section 13-217. In March 2007, the trial court dismissed Struif's claims against Kornick on the reasonable but mistaken[3] belief that they were barred by *res judicata*. In July 2007, while waiting for the federal court to rule on her motion to amend the May 5, 2004, order, Struif refiled her claims against Kornick a second time, this time in State Case II. She later voluntarily dismissed those claims in March 2008. In May 2008, based on the federal court's correction of the May 5, 2004, order to read "without prejudice," Struif asked the trial court to reconsider its *res judicata* dismissal of her claims against Kornick in the present case and to reinstate those claims. The trial court vacated the dismissal of the claims on the basis that the May 5, 2004, federal court order was void but denied Struif's request to reinstate the claims, because to do so would be tantamount to an impermissible refiling under section 13-217, given that she had used her one opportunity to refile when she filed State Case II.

¶ 36 First, the trial court was incorrect in its conclusion that State Case II was Struif's one permitted refiling. It is clear that, after Struif voluntarily dismissed her claims against Kornick in the federal court, she was entitled to only one refiling of those claims under section 13-217. She used that one refiling when she filed her counterclaims in the present case in September 2004. Accordingly, contrary to the trial court's conclusion, State Case II was not Struif's one permitted refiling. Rather, State Case II was an improper sec*ond* refiling and would have been subject to dismissal on that basis had Struif not voluntarily dismissed it first. Given that Struif had already used her one refiling when she filed her counterclaims in the present case, the fact that she had made additional, improper refilings at the time she filed her motion to reconsider the dismissal of her claims against Kornick in the present case is completely irrelevant to the question of whether the claims should have been reinstated.

¶ 37 More importantly, however, the trial court erred in concluding that reinstatement of Struif's claims against Kornick in the present case would have been tantamount to an impermissible second (or third) refiling. Unlike situations where a plaintiff attempts to refile her claims a second time after she has voluntarily dismissed them and her one permitted refiling has been dismissed, Struif was not, once again, seeking to refile and pursue her claims for a third time in the face of such dismissals. Rather, through no fault of her own, Struif's properly refiled claims in the present case were erroneously and involuntarily dismissed, and she was simply trying to correct that error when she sought to have the dismissal vacated and her claims reinstated. Reinstatement of her claims after correcting that erroneous dismissal would not be

---

[3]We say reasonable because the trial court relied on an order that stated the dismissal of Struif's claims against Kornick was with prejudice, which would ordinarily bar her refiled claims against Kornick on the basis of *res judicata*. We also say mistaken, however, because the order on which the trial court relied—the federal court's order of May 5, 2004—incorrectly stated that Struif's voluntary dismissal of her claims against Kornick was with prejudice.

tantamount to initiating a new case; rather it would simply be a continuation of her already filed claims by restoring them to the status they should have had all along.

¶ 38    Our conclusion in this respect is supported by the case of *National Underground Construction Co. v. E.A. Cox Co.*, 273 Ill. App. 3d 830 (1995). In that case, the plaintiff filed a declaratory judgment action against the defendant. The trial court granted summary judgment in favor of the defendant. On appeal, the appellate court reversed the trial court's grant of summary judgment and remanded the matter for further proceedings. *Id.* at 832. Nearly two years later, the plaintiff filed a motion to reinstate the case pursuant to Illinois Supreme Court Rule 369(c) (eff. July 1, 1982). The trial court denied the plaintiff's motion, and the plaintiff appealed. *National Underground*, 273 Ill. App. 3d at 832-33.

¶ 39    The appellate court ultimately affirmed the trial court's decision on the basis that the plaintiff did not seek to reinstate its case under Rule 369(a) within a reasonable period of time. *Id.* at 836-37. In doing so, however, the appellate court rejected the defendant's contention that the plaintiff's attempt to reinstate its claims more than one year after remand was barred by section 13-217. The court noted that section 13-217 does not specifically address the effect of a mandate remanding a case. In addition, it observed that the reinstatement of a case after remand does not constitute the filing of a new action and, thus, by its own terms, section 13-217 did not apply. *Id.* at 834; see also *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 48 ("A refiled action pursuant to section 13-217 is not a restatement of the old action, but an entirely new and separate action."); *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 504 (1997) ("We note that the refiled action is an entirely new and separate action, not a reinstatement of the old action. *** The original and refiled actions are completely distinct actions.").

¶ 40    Obviously, the situation before us does not involve the reinstatement of claims following remand. Nevertheless, we find the reinstatement of claims following the trial court's vacating of an erroneous dismissal to be analogous to the reinstatement of claims following the appellate court's reversal of an erroneous dismissal. In neither situation is the plaintiff filing a new action as required for the application of section 13-217. Rather, in both situations, the plaintiff is simply seeking to place her already existing claims in the same procedural place as they would have been had the trial court not erred in dismissing them. To hold that the reinstatement of claims following the correction of an erroneous involuntary dismissal is tantamount to filing a new action under section 13-217 would essentially preclude plaintiffs who had used their one permitted refiling under section 13-217 from seeking the correction of erroneous involuntary dismissals of their refiled claims. Such cannot be the case.

¶ 41    Accordingly, we conclude that the trial court erred in denying Struif's request that her claims against Kornick be reinstated after the trial court vacated its dismissal based on *res judicata*.

¶ 42                              Dismissal of Claims Against Koch

¶ 43    Struif next argues that the trial court erred in dismissing her conversion claim (count XIII of the fifth amended counterclaim) against Koch on the basis that it was barred by the statute of limitations. Struif contends that, under the discovery rule, the statute of limitations did not begin to run until May 2010, when she received a response to a subpoena issued to OFTF's accountant and learned that her 18.2% interest in OFTF had been transferred to Koch. We disagree.

¶ 44    Koch's motion to dismiss Struif's claims against her on the basis of the statute of limitations was brought pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2010)). A motion to dismiss brought pursuant to section 2-619 of the Code is designed to allow for the disposition of issues of law and easily proved issues of fact. *O'Hare Truck Service, Inc. v. Illinois State Police*, 284 Ill. App. 3d 941, 945 (1996). Under such motions, the legal sufficiency of the complaint is admitted, as are all well-pleaded facts. *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 21 (1997). The relevant question in assessing the propriety of a dismissal under section 2-619 is whether there exists a genuine issue of material fact that precludes dismissal or, in the absence of such an issue of fact, whether dismissal is proper as a matter of law. *Id.* Our review is *de novo*. *Id.*

¶ 45    Neither of the parties disputes that Struif's conversion claim against Koch is subject to a five-year statute of limitations. See 735 ILCS 5/13-205 (West 2002). Under the discovery rule, a cause of action accrues, *i.e.*, the statute of limitations begins to run, when "the plaintiff knows or reasonably should know of an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another." *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 169 (1981). This does not mean that the plaintiff must know of the defendant's negligent conduct before the statute of limitations begins to run. *Id.* at 170. Rather, "when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." *Id.* at 171. In situations where a plaintiff knows or reasonably should know that her injury was caused by one source but is unaware of another source of her injury that could not have been discovered through diligent inquiry, the statute of limitations does not begin to run with respect to the second source of injury until it becomes discoverable through diligent inquiry. *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 31. It is unnecessary that the plaintiff know the specific identity of the tortfeasor before the statute of limitations will begin to run. See *Guarantee Trust Life Insurance Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶ 30 (noting that the notion that knowledge of the identity of the tortfeasor is a prerequisite to the running of the statute of limitations has been repeatedly rejected by Illinois courts); *Wells v. Travis*, 284 Ill. App. 3d 282, 287 (1996) ("Knowledge that an injury has been 'wrongfully caused' does not mean knowledge of a specific defendant's negligent conduct."). Unless the facts are undisputed and there is only one conclusion that may be drawn from them, when a party knew or should have known of the injury and its probable wrongful cause is a question of fact. *Nolan*, 85 Ill. 2d at 171.

¶ 46    Here, the trial court found that Struif knew of or should have known of her injury resulting from the transfer of her ownership interest in OFTF no later than the time she filed her claims in federal court in October 2003. We assume, based on the trial court's statement that Struif's loss of income (distributions from her OFTF interest) was a continual effect of an initial violation (the divestment of her ownership interest in OFTF), that the trial court believed that Struif knew or should have known that she had been divested of her interest in OFTF because she had not received her share of distributions from OFTF.

¶ 47    We do not believe that the fact that Struif did not receive her share of OFTF distributions necessarily means, as a matter of law, that she had been completely divested of her ownership interest in OFTF. Nevertheless, we do agree that the statute of limitations began to run no later than October 2003, when Struif filed her claims in federal court. At that time, there is no dispute that Struif knew that she had not received her share of the OFTF distributions. There is also no

dispute that she knew that the withholding of her share of the distributions was wrongful. This wrongful withholding of her share of the OFTF distributions triggered the running of the statute of limitations and Struif's obligation to investigate further the cause of that wrongful withholding (*i.e.*, the transfer of her interest in OFTF to Koch) and whether an actionable wrong had been committed. See *id.* ("[W]hen a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed.").

¶ 48   Notably, Struif does not argue that she did not or could not have known of her injury or that her obligation to investigate further into the cause of her injury was not triggered as of October 2003. Instead, Struif focuses on the fact that she did not know that Koch, specifically, was the recipient of Struif's ownership interest in OFTF and the resulting income, arguing that there were two sources of her injury: Kornick and Koch. We disagree. First, as discussed above, it is unnecessary for Struif to have specifically known Koch's identity before the statute of limitations would begin to run. See *Guarantee Trust*, 2016 IL App (1st) 160672, ¶ 30; *Wells*, 284 Ill. App. 3d at 287. Second, although Kornick and Koch might have been two separate tortfeasors, they were not two separate *sources* of her injuries. The source of her injury was the transfer of her ownership interest—whether to Koch or anyone else—which then resulted in the injury of Struif not being paid her share of distributions from OFTF. As stated above, no later than October 2003, Struif knew of this injury—the wrongful withholding of her share of distributions—and had an obligation to investigate its cause—the wrongful transfer of her interest in OFTF.

¶ 49   Struif makes a number of additional arguments in an attempt to avoid the application of the statute of limitations: Kornick and OFTF fraudulently concealed Struif's cause of action against Koch by resisting and evading discovery, Kornick transferred Struif's interest in OFTF to Koch in an attempt to insulate himself from judgment and hide Struif's cause of action against Koch, Kornick owed Struif a fiduciary duty to disclose his transfer of Struif's interest to Koch, and Koch was equitably estopped from asserting a statute of limitations defense, because she never let on to Struif that Kornick had transferred Struif's interest to her. These arguments do not warrant reversal of the trial court's decision.

¶ 50   First, the claim that Kornick and OFTF fraudulently concealed Struif's cause of action against Koch by resisting and evading discovery appears to primarily be based on speculation regarding Kornick's and OFTF's alleged fraudulent intent. Specifically, Struif claims that Kornick and OFTF made frivolous objections to discovery requests, refused to produce documents, requested substitutions of judge for the sole purpose of delaying proceedings, and lulled Struif with "good faith" attempts at mediation. Although the record reflects that Kornick and OFTF made objections to discovery requests, filed for substitutions of judge, and requested mediation, the characterization of the objections as frivolous, the motions for substitutions as being solely for delay, and the requests for mediation as attempts to lull Struif are made only by Struif and are not supported by the record on appeal. Moreover, Struif has not included in the record on appeal any transcripts of hearings related to the parties' motions to compel discovery, motions for substitution of judge, or requests for mediation. Therefore, there is nothing in the record from which we can glean ill intent by Kornick and OFTF. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the

absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 51    Struif's claim that Kornick fraudulently transferred Struif's interest in OFTF to Koch for the purpose of insulating himself from judgment and to conceal the cause of action against Koch also has no bearing on our decision. The reason that Kornick transferred Struif's interest in OFTF to Koch is irrelevant to the determination of when the statute of limitations began to run. In addition, we think the defect in Struif's contention that Kornick transferred Struif's interest to Koch for the purpose of concealing Struif's cause of action against Koch based on the transfer of her interest is readily apparent: she is essentially arguing that Kornick transferred her interest to keep her from discovering that her interest had been transferred. This argument defies logic and certainly does not warrant reversal.

¶ 52    Struif's final two contentions—that Kornick owed Struif a fiduciary duty to disclose the transfer to Koch and that Koch was equitably estopped from asserting a statute of limitations defense—were raised for the first time in Struif's posttrial motion. Issues raised for the first time in a posttrial motion are waived and will not be considered. *Obermeier v. Northwestern Memorial Hospital*, 2019 IL App (1st) 170553, ¶ 132; *Zdeb v. Baxter International, Inc.*, 297 Ill. App. 3d 622, 630 (1998).

¶ 53    In sum, for the above reasons, we conclude that the statute of limitations on Struif's conversion claim against Koch began to run no later than October 2003. Accordingly, more than five years had passed by the time Struif filed her conversion claim against Koch in November 2011, and the trial court did not err in dismissing that claim on the basis that it was time-barred.

¶ 54                                    Petition for Costs

¶ 55    Finally, Struif argues that the trial court erred in reducing her costs on the basis that some of them were related to the federal case, because OFTF did not file a counteraffidavit refuting her claim that all the costs were related to the present case. Struif asserts that, absent a counteraffidavit, her assertion that all the costs were related to this case must be taken as true. Struif's contention fails for several reasons.

¶ 56    First, it is not apparent from the record that the trial court reduced Struif's claimed costs solely on the basis that some of them were related to the federal case. Following the filing of Struif's petition and OFTF's response, the trial court held a hearing on July 20, 2017. At that hearing, counsel for OFTF expressed concern that some of the claimed costs were actually related to the federal court litigation. Counsel for Struif denied that any of the included costs were related to the federal case. The trial court indicated that if any of the claimed costs were, in fact, related to the federal case, then it would disallow them. Despite Struif's contention to the contrary, however, at the July 20, 2017, hearing, the trial court did not reduce any of the claimed costs based on their relationship to the federal case. Rather, the trial court continued the matter and entered an order directing counsel for OFTF to provide Struif's counsel with a list of specific line items OFTF contested, permitting Struif the opportunity to respond to those line items and file supporting documentation, and setting the matter for another hearing. In the final judgment order entered on September 24, 2018, the trial court awarded Struif a reduced amount of costs, "as adjusted by the Court for the reasons stated on the record, after making deductions for line items of costs challenged by [OFTF] and allowed by the Court." The record

does not contain OFTF's specific objections, Struif's response to those objections, or a transcript of the subsequent hearing on the petition. Thus, it is not clear from the record that the reason the trial court reduced Struif's costs was because some of them were related to the federal case. Accordingly, the fact that OFTF did not submit a counteraffidavit supporting its contention that some of the costs were related to the federal case is not, on the record before us, alone sufficient to warrant reversing the trial court's award of costs.

¶ 57        Second, we observe that, in its initial written response to Struif's petition for costs, OFTF argued that some of the claimed costs were not allowed by law, others were not justified by Struif as necessary expenses, and still others were unsupported by documentary evidence. Accordingly, not all of OFTF's arguments against Struif's claimed costs were based on factual disputes. Rather, OFTF argued that a number of claimed costs simply were not allowed by law. Because such arguments were based on legal arguments and not factual disputes, the lack of a counteraffidavit does not preclude a reduction of costs on those bases.

¶ 58        Finally, Struif's failure to include in the record on appeal OFTF's specific objections to the claimed costs, Struif's response to those objections, Struif's supporting documentation, and a transcript of the subsequent hearing at which those objections were addressed and the trial court stated its reasons for reducing the claimed costs precludes us from conducting any meaningful review of the trial court's decision to reduce Struif's claimed costs.

> "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 391-92.

Absent the parties' supplemental filings regarding Struif's petition for costs and a transcript of the hearing at which the trial court addressed and ruled on OFTF's specific objections, we have no basis on which to conclude that the trial court abused its discretion in reducing Struif's claimed costs. See *id.* at 392 ("As there is no transcript of the hearing on the motion to vacate here, there is no basis for holding that the trial court abused discretion in denying the motion."); see also *Riley Acquisitions, Inc. v. Drexler*, 408 Ill. App. 3d 397, 408 (2011) ("We review a trial court's order on a petition for costs for abuse of discretion.").

¶ 59        In sum, we conclude that the absence of a counteraffidavit filed by OFTF is not, alone, enough to warrant reversal of the trial court's award of reduced costs, and the absence of a complete record on appeal otherwise precludes us from finding that the trial court abused its discretion in making its award.

¶ 60                                                    CONCLUSION

¶ 61        For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded for further proceedings consistent with this decision.

¶ 62        Affirmed in part, reversed in part, and remanded.