# Illinois Official Reports

## Appellate Court

---

### *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526

---

| | |
|---|---|
| Appellate Court Caption | CHARLES ARBOGAST, Plaintiff-Appellee, v. CHICAGO CUBS BASEBALL CLUB, LLC; CHICAGO NATIONAL LEAGUE BALL CLUB, INC.; and CHICAGO CUBS, INC., Defendants (Chicago Cubs Baseball Club, LLC, Defendant-Appellant). |
| District & No. | First District, Second Division<br>No. 1-21-0526 |
| Filed | November 16, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 20-L-5731; the Hon. Patricia O'Brien Sheahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert M. Burke, David M. Macksey, and Carlos A. Vera, of Johnson & Bell, Ltd., of Chicago, for appellant.<br><br>Timothy S. Tomasik, Patrick Giese, and Philip P. Terrazzino, of Tomasik Kotin Kasserman LLC, and Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, P.C., both of Chicago, for appellee. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Justices Howse and Lavin concurred in the judgment and opinion.


**OPINION**

¶ 1 In this interlocutory appeal, the defendant, Chicago Cubs Baseball Club, LLC (Cubs), challenges the trial court's order denying a motion to dismiss this action for personal injury brought by the plaintiff, Charles Arbogast, on the grounds that the claim must be submitted to arbitration. For the following reasons, we affirm the trial court's denial of the motion to dismiss.

¶ 2                             I. BACKGROUND

¶ 3 The plaintiff's complaint alleges that on July 26, 2018, he was working as a photographer in a designated photo well at Wrigley Field, when he tripped or fell on a stack of pallets that photographers would stand on to take photographs of baseball games. His complaint alleged that the stack of pallets caused a hazardous condition for those on the premises and that each of the defendants knew or should have known of this. He alleged that each of the defendants was negligent in permitting this hazardous condition to exist, failing to warn of it, failing to construct a safe platform for the photographers to stand on, or failing to create a safe walking surface.

¶ 4 The Cubs filed a motion to dismiss the complaint pursuant to section 2-619(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(1) (West 2020)). That motion sought dismissal of the complaint on the basis that a valid and enforceable arbitration agreement existed between the plaintiff and the Cubs that required this case to resolved through binding arbitration in New York.

¶ 5 The Cubs' motion was supported by the affidavit of Alex Wilcox, who had served as their coordinator of media relations since 2017 and supervisor of media relations since 2018. Wilcox's affidavit asserted the following facts. The plaintiff is a professional photojournalist and staff photographer for the Associated Press, who on information and belief had worked in that capacity for at least 10 years. Each baseball season since at least 2010, the plaintiff had obtained media credentials that gave him access to Major League Baseball events, including Cubs games at Wrigley Field, and a license to take photographs at those events. To gain admittance to Wrigley Field and take photographs, the plaintiff was required to wear and display a media credential. The plaintiff's name and photograph were on the front of the credential. The back of it, an exemplar of which was attached to Wilcox's affidavit, contained text that stated as follows:

"CONDITIONS

Bearer is hereby granted admission to 2018 Major League Baseball regular season games, workouts, activities and events (the 'Games') on the following conditions, which are accepted and agreed upon by Bearer.

1. The Major League Clubs are the exclusive owners of all proprietary rights in their names, logos and uniform designs, and in Games and Game Information, except for Bearer's Game Information created pursuant to this credential.

2. Bearer assumes all risks incidental to the performance of his/her services and/or incidental to Games, including the risk of being injured by thrown bats, bat fragments and thrown or batted balls.

3. THIS CREDENTIAL MAY BE REVOKED AT ANY TIME WITHOUT CAUSE.

4. While within the ballpark, Bearer shall be subject to the direction and/or supervision of the Club and its designated agents.

5. Bearer acknowledges receipt and review of, and agrees to be bound by, the further terms and conditions contained on the website of the Office of the Commissioner of Baseball at MLBPressbox.com.

MEDIA INFORMATION

Media may access game information, including rosters, game notes and statistics, at CubsPressbox.com. Please contact a member of the Cubs Media Relations Department with any questions."

¶ 6    Wilcox's affidavit went on to assert that the terms and conditions referenced on the back of the credential were available to the plaintiff online by accessing the MLBPressbox.com website. A printed copy of the terms and conditions that had been available on that website for the 2018 baseball season was attached to Wilcox's affidavit. Those terms and conditions were six pages in length and, relevant to this appeal, they provided in pertinent part as follows:

"THESE TERMS AND CONDITIONS ARE APPLICABLE TO (A) BEARERS OF CREDENTIALS MARKED MEDIA, TECH, PHOTO, PHOTOGRAPHER, EVENT BROADCAST, MLB NETWORK OR RIGHTSHOLDER (COLLECTIVELY, 'MEDIA BEARERS') *** ((A), (B) and (C) ARE EACH A 'BEARER' AND, COLLECTIVELY, THE 'BEARERS').

IMPORTANT: BEARER'S CREDENTIAL OR ACCESS BADGE (COLLECTIVELY, 'CREDENTIAL') IS A REVOCABLE LICENSE AND MAY BE REVOKED AT ANY TIME WITHOUT CAUSE.

Each Bearer signing for or using a Credential, including his/her/its employers and employees, for games, workouts, activities, attractions and events associated with Major League Baseball (each an 'Event' and, collectively, the 'Events') agrees *** to the following terms and conditions (the 'Agreement') ***.

* * *

22. FOR MEDIA BEARERS AND ACCESS BADGE BEARERS ONLY: Unless prohibited by federal law, Bearer and the MLB Entities agree to arbitrate any and all Claims, except for Claims concerning the validity, scope or enforceability of this MANDATORY ARBITRATION AGREEMENT & CLASS ACTION WAIVER (the 'Arbitration Agreement'), through BINDING INDIVIDUAL ARBITRATION. This Arbitration Agreement involves interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ('FAA'), and not by state law. *** The arbitration shall take place in New York, New York. *** BEARER HAS THE RIGHT TO REJECT THIS ARBITRATION

AGREEMENT, BUT BEARER MUST EXERCISE THIS RIGHT PROMPTLY. If Bearer does not wish to be bound by this Arbitration Agreement, Bearer must notify the MLB Entities by mailing a written opt-out notice, postmarked within seven (7) days after the date of the applicable Event to: Major League Baseball, Attn: Legal Department, 30th Floor, Re: Arbitration Opt-Out, 245 Park Avenue, New York, NY 10167. The request must include Bearer's full name, address, account number, and the statement 'I reject the Arbitration Agreement contained in my Credential.' "

¶ 7    Finally, Wilcox's affidavit asserted that, for the plaintiff to have received a media credential, a representative from the Associated Press was required to complete an online application on behalf of the plaintiff and other staff photographers who would be taking photographs at baseball games. The purpose of requiring this was to verify that each applicant was an authorized representative or photographer for the media company identified in the application. On March 23, 2018, an Associated Press representative named Michael Green applied for the credential that was issued to the plaintiff for the 2018 baseball season. When completing that application, Green was required to click an acknowledgement stating, "I've read and agree to the Terms and Conditions." (No copy of this application was attached to Wilcox's affidavit.) On the day at issue, the plaintiff used his credential to access the area of Wrigley Field where his injury allegedly occurred, and he was allowed to access this area only because he was a staff photographer displaying the credential.

¶ 8    In their motion to dismiss, the Cubs argued that a contract was formed when the plaintiff used the media credential that had been obtained on his behalf by the Associated Press to access Wrigley Field and photograph Cubs games. The Cubs asserted that the credential plainly stated that the bearer agreed to be bound by the further terms and conditions on the MLBPressbox.com website, and those terms and conditions included an agreement to arbitrate disputes. Thus, the club argued, because an arbitration agreement clearly existed and encompassed the plaintiff's claims, the complaint must be dismissed and the claims proceed through arbitration.

¶ 9    The plaintiff filed a response to the motion to dismiss, which was supported by his own affidavit. He asserted that the Cubs had produced no evidence of any contract existing between the Cubs and him, let alone one that included an agreement to arbitrate disputes. The plaintiff argued that he had never given Green or anyone else at the Associated Press permission to agree to an arbitration provision on his behalf and that a non-signatory to a contract could not be bound to an arbitration clause he or she has not agreed to.

¶ 10    Alternatively, citing this court's decision in *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, the plaintiff argued that even if a contract had been formed in the manner as argued by the Cubs, the arbitration provision was unenforceable under the doctrine of procedural unconscionability. In support of this argument, the plaintiff pointed out that his credential mentioned nothing about arbitration or the ability to opt out of it and that the website address on the back of his credential was set forth in regular type unhighlighted in any way. The plaintiff also pointed out that accessing the MLBPressbox.com website did not take a user directly to the arbitration provision. Instead, that address was to a webpage with various hyperlinks on a variety of topics. A user had to locate and click a hyperlink titled "Credential Terms & Conditions," at which point the user was taken to yet another webpage consisting of 25 paragraphs of terms and conditions spanning six pages. The arbitration provision was at

paragraph 22. The plaintiff contended that it would be procedurally unconscionable to bind him to an arbitration provision in an agreement he had never seen, "the full terms of which must be hunted on the internet." He asserted that nothing about the credential was designed to impress upon a credential holder the importance of visiting the website to read the arbitration provision. Additionally, he argued that the arbitration provision was substantively unconscionable because the seven-day opt out period was unreasonably short and required that a user "must" include an account number to do so, which he did not have.

¶ 11　　Finally, the plaintiff's response asserted that Wilcox's affidavit should be stricken for violating the requirement of Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) that affidavits in support of a motion to dismiss "shall have attached thereto sworn or certified copies of all documents upon which the affiant relies." The plaintiff argued that Wilcox was relying on documents, including the application for media credentials submitted by Green, which were not attached to his affidavit.

¶ 12　　After the plaintiff filed his response, the Cubs filed a motion to extend the time for filing a reply brief. That motion stated that, in light of the arguments made in the plaintiff's response brief and the statements in his affidavit, the Cubs had served him with a set of 19 requests to admit on the same day the motion was filed. The motion asserted that the pertinent facts to be established by the requests to admit were that the plaintiff received media credentials on March 23, 2018, that he had used them to attend 18 games at Wrigley Field prior to the occurrence, that he could have read the terms of the credentials during this period prior to the day of his injury, and that he had access to the Internet during this time period.

¶ 13　　The plaintiff objected to the Cubs' motion for an extension. The plaintiff argued that it was inappropriate for a defendant to issue new discovery after a plaintiff had already filed a response to a motion to dismiss for the purpose of obtaining additional evidence to be used in a reply brief. In the Cubs' reply in support of the motion for an extension, the club asserted that allowing its discovery request would be proper as the plaintiff's response and affidavit had raised new factual issues that the court should resolve in deciding the motion.

¶ 14　　On April 16, 2021, the trial court sent an e-mail to the parties, in which it ruled on the pending motions. In that e-mail, which was made part of the common law record, the trial court stated:

> "I agree that *Zuniga v. Major League Baseball* is controlling authority. Defendant's request for an extension of time to file its reply brief in order to conduct discovery by virtue of issuing requests to admit is improper and is denied. In light of the *Zuniga* decision, I am striking defendant's motion to dismiss without prejudice. I am also striking the requests to admit issued to plaintiff. If discovery is needed, defendant must answer and may file a motion for summary judgment at the appropriate time. Defendant shall answer or otherwise plead within 21 days."

On April 19, 2021, the trial court entered an order denying the motion to dismiss and compel arbitration, denying the motion to extend the briefing schedule, striking the requests to admit, and ordering the defendants to answer or otherwise plead within 21 days. The Cubs thereafter filed a timely notice of interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), pursuant to which we have jurisdiction over an order refusing to compel arbitration.

## II. ANALYSIS

Procedurally, this appeal involves the denial of the Cubs' motion to dismiss under section 2-619(a)(1) of the Code (735 ILCS 5/2-619(a)(1) (West 2020)), which sought dismissal of the plaintiff's complaint and to compel resolution of the parties' dispute through arbitration. A motion under section 2-619(a)(1) provides for the involuntary dismissal of an action on the basis that the court does not have jurisdiction of the subject matter of the action. *Id.* Where the grounds for dismissal do not appear on the face of the complaint, the motion must be supported by affidavit. *Id.* § 2-619(a). The supreme court has recognized section 2-619(a)(1) as being an appropriate provision by which a defendant may compel compliance with a binding arbitration provision. See *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004). A court ruling on such a motion interprets all pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* The standard of review on appeal is *de novo*. *Id.* The relevant question in assessing whether dismissal is proper under section 2-619 is whether a genuine issue of material fact exists that precludes dismissal or, in the absence of such an issue of fact, whether dismissal is proper as a matter of law. *One Fish Two Fish LLC v. Struif*, 2021 IL App (1st) 191441, ¶ 44.

On appeal, the Cubs argue that the trial court erred in denying its motion to dismiss and refusing to compel arbitration. The Cubs contend that the undisputed facts establish that a contract existed between the Cubs and the plaintiff and that this contract included an enforceable provision requiring the plaintiff's claim to be resolved through binding arbitration. The plaintiff, however, denies that any contractual relationship existed between the Cubs and him. He argues that this also is an undisputed fact. He further argues that even if a contract existed in the way argued by the Cubs, the arbitration provision is unenforceable because it is unconscionable.

Thus, our inquiry must begin with the question of whether these two parties entered into a written contract at all. As the issue ultimately involves an arbitration clause, we note also that the putative written contract states on its face that it is to be governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2018)) and not by state law. The Federal Arbitration Act provides that a written provision in a contract to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. It thus reflects the fundamental principle that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Therefore, when a party opposing arbitration contests that he or she has formed or entered into any contract at all with the party seeking to compel arbitration, this presents a threshold question to be resolved by the court.[1] *Granite Rock Co. v. International Brotherhood*

---

[1]While we do not interpret the argument to seriously dispute that the question of whether a contract exists is an issue to be resolved by a court, not by an arbitrator, the Cubs nevertheless devote a substantial portion of its brief to the point that the "validity" of a contract as a whole is to be decided in the first instance by an arbitrator, not the court. As that term is used in this context, a challenge to a contract's "validity" would involve, for example, fraud in the inducement of an otherwise properly formed contract. *Janiga*, 615 F.3d at 741. It is well established that the issue of a contract's "validity" is different than the issue (involved here) of whether any contract was formed at all, and the latter is a question to be resolved by the court. *Id.* at 741-42 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is different from the issue whether

*of Teamsters*, 561 U.S. 287, 296 -97 (2010); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741-42 (7th Cir. 2010). The question of whether a contract exists between the parties is decided according to state law contract formation principles. *Janiga*, 615 F.3d at 742 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

¶ 19       The existence of a contract, its terms, and the parties' intent are questions of fact to be determined by a trier of fact. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 81. Only when no factual dispute exists does the issue of a contract's existence become a question of law for the court. *Hany v. General Electric Co.*, 221 Ill. App. 3d 390, 397 (1991).

¶ 20       Neither party has directed our attention to any case analyzing the question of contract formation under facts similar to this one. Thus, we look to normal principles governing contract formation. For a transaction to constitute a contract, the basic requirements are the existence of an offer, acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006). For a contract to be enforceable, there must also be mutual assent as to the contract's terms. *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 51 (citing *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991)). " 'An offer is an expression by one party of his assent to certain definite terms, provided that the other party involved in the bargaining transaction will likewise express his assent to the identically same terms. An offer looks forward to an agreement—to mutual expression of assent.' " *Calo, Inc. v. AMF Pinspotters, Inc.*, 31 Ill. App. 2d 2, 8 (1961) (quoting 1 Arthur L. Corbin, Corbin on Contracts § 11, at 23 (1950)). Whether parties have mutually assented to the terms of a contract is a question of fact. *Calo*, 31 Ill. App. 2d at 18. Whether mutual assent or an intent to accept exists is determined by an objective standard. *McCarty v. Verson Allsteel Press Co.*, 89 Ill. App. 3d 498, 511 (1980). In other words, it is not necessary that the parties share the same subjective understanding as to the contract's terms, as it suffices if their conduct objectively indicates an agreement to the terms of the purported contract. *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 313-14 (1987). Only the parties' overt acts and the communications between them may be considered in determining whether and upon what terms they have entered into a contract. *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 133.

¶ 21       The most common way by which mutual assent can be shown is through a signature on a contract. *Hedlund & Hanley, LLC v. Board of Trustees of Community College District No. 508*, 376 Ill. App. 3d 200, 206 (2007). A party who has signed a contract is charged with knowledge of and assent to its terms. *Melena*, 219 Ill. 2d at 150. However, it is also well settled that a party may, by acts and conduct, indicate assent to the terms of a written contract and become bound by its provisions, even though the party has not signed it. *Landmark Properties, Inc. v. Architects International-Chicago*, 172 Ill. App. 3d 379, 383 (1988). For a course of conduct to act as consent to a contract, it must be clear that the conduct relates to the specific contract in question. *Id.*

¶ 22       In this case, it is undisputed that there is no contract signed by the plaintiff. Rather, the Cubs argue that the plaintiff's conduct of procuring and using the media credential constituted a manifestation of his assent to the terms and conditions of the MLBPressbox.com website

any agreement between the alleged obligor and obligee was ever concluded."); *Rent-A-Center*, 561 U.S. at 70 n.2 (same)).

referenced on the back of the credential, which included the arbitration provision. The Cubs point out that the plaintiff procured the media credential through his employer, the Associated Press, and he used that credential to attend 18 games during the 2018 baseball season to perform his work as a photographer prior to the day of his injury. The Cubs also state that plaintiff had done this every baseball season since 2010.

¶ 23 The Cubs assert that an offer and an acceptance exist in this context. The club contends it offered the media credential upon the conditions (1) that a representative of the Associated Press apply for it on behalf of staff photographers and (2) that using the credential constituted an acceptance of the terms and conditions; and that offer was accepted when (1) the Associated Press submitted an application and (2) the plaintiff used the credential that was obtained. As to the first aspect of this argument, the Cubs contend that it required a representative of the Associated Press to apply for a media credential to distribute to its agents, including the plaintiff, and during the application process Michael Greene agreed to the contract's terms. The Cubs argue that the plaintiff can be bound by contractual terms and conditions that his employer accepted on his behalf, and this can include an arbitration agreement. See *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121-22 (3d Cir. 1993). As for the second aspect of their argument, the Cubs assert that the physical characteristics of the credential plainly communicated the existence of the terms and conditions to which the user was agreeing by using it, and the plaintiff had ample opportunity to access, read, and become familiar with the terms and conditions during the four-month period that he possessed and repeatedly used it.

¶ 24 For his part, the plaintiff contends that no contract exists between himself and the Cubs. He points out that he never signed any physical document. He asserts that he was never a party to a contract negotiation and never agreed to anything. He further contends that it is undisputed that he never authorized Green, who was merely his coworker at the Associated Press and not a supervisor, to agree to a contract or arbitration provision on his behalf. He points out that the record contains no evidence of what Green purportedly even agreed to on his behalf.

¶ 25 We conclude that a genuine issue of material fact exists about whether any contract existed between the plaintiff and the Cubs in this context, and for this reason the trial court properly denied the Cubs' motion to dismiss. As to the first aspect by which the Cubs assert that it made an offer that was accepted or assented to by the plaintiff—that being the application for the plaintiff's media credential that was submitted by Michael Green of the Associated Press—we find that the record fails to demonstrate the existence of any agreement. Neither the application itself nor any other communications involving that application are included in the record. As such, we have no evidence upon which to credit the Cubs' assertion that the submission of this application by Green had the effect of binding the plaintiff to the terms of any contract. The purpose of requiring this application, according to Wilcox's affidavit, was merely "to verify that each applicant was an authorized representative or photographer for the media company identified in the application." This stated purpose has nothing to do with binding individual photographers to the terms of a contract. Although Wilcox's affidavit states that Green was required in submitting the application to click an acknowledgement stating that *Green* had read and agreed to the terms and conditions, this averment is insufficient to establish assent *by the plaintiff* to the terms and conditions at issue.

¶ 26 As to the second aspect by which the Cubs assert that it made an offer that was accepted by the plaintiff—that being his use of the media credential that referenced the terms and

conditions on the back—we find clear issues of fact exist about whether mutual assent to the terms of a contract occurred here. The record contains no evidence about any communications made to the plaintiff about this credential, other than what is communicated on the physical credential itself. And we have serious doubts about whether a reasonable person in the plaintiff's position would have been put on notice that the issuance of this physical credential constituted an offer to form a contract upon the terms and conditions on the MLBPressbox.com website by making use of it.

¶ 27 As set forth above, a party's acts and conduct may be sufficient to objectively show that party's manifestation of assent to the terms of a written contract. *Landmark Properties*, 172 Ill. App. 3d at 383. However, the conduct of a party is not effective as a manifestation of assent unless that party knows or has reason to know that the other party may infer from his conduct that he assents. Restatement (Second) of Contracts § 19(2) (1981). The circumstances of the transaction must provide the offeree with reasonable notice that the terms of a contract are being offered and that certain acts or conduct by the offeree will constitute acceptance of the offer. See *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983-84 (2005); *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016). " '[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious.' " *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 30 (2d Cir. 2002) (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 351 (Ct. App. 1972)); accord *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014); 17 C.J.S. *Contracts* § 71 (2021).

¶ 28 In this case, the contractual nature of the physical credential itself is not obvious. Its validity does not require a recipient to sign it, for example, which might signal to a recipient that it purports to contain contract terms. Also, the physical credential has a primary purpose that has nothing to do with contracting. In other words, wearing, displaying, or scanning it apparently enables members of the media to access events and places not necessarily accessible to the general public. It would appear, though, that the credential could be placed in a protective case with the back of it covered and, as long as the front of it is visible, a person could make full use of it for its principal purpose without necessarily ever needing to look at what is printed on the back. Moreover, it is not something received in connection with a transaction that a person would normally consider contractual in nature, such as the sale or purchase of goods or services. An individual media member's work providing media coverage of the Cubs is not something we would consider obviously contractual in nature as between that individual and the Cubs. Thus, it seems in this context that a person could receive the physical credential and make full use of it without necessarily being on notice that the Cubs considered that use to constitute assent to the terms of a contract.

¶ 29 On this point, the Cubs argue that "[t]icket contracts that condition acceptance upon use are routinely upheld." The club cites the "reasonable communicativeness" test that has been applied by courts in determining whether contract terms such as forum selection clauses and liability limitations that are printed on items such as cruise ship tickets, airline tickets, and ski-lift tickets are binding on those who have purchased such tickets. See, *e.g.*, *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 134 (2008) (cruise ship ticket); *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1363-65 (9th Cir. 1987) (airline ticket); *O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98, 103 (D. Conn. 1998) (ski-lift ticket). This court has described the reasonable communicativeness test as follows:

"[N]ot all terms and conditions affecting the parties' legal relationship are enforceable merely because they are printed on the back of an airline ticket, concert ticket, or the like. Courts generally employ a 'reasonable communicativeness' test with airline tickets or similar tickets to determine whether the ticket reasonably communicates to the passenger the existence of important terms and conditions that affect the passenger's legal rights, so as to bind the passenger to them. [Citations.]

That test first takes into account whether the physical characteristics of the ticket reasonably communicate the existence of the terms and conditions at issue, considering factors such as the conspicuousness of the clause at issue, the size of type used, the clarity of the terms, and the ease with which a passenger can read the terms at issue. *Walker*, 383 Ill. App. 3d at 134-35. *** Second, the reasonable communicativeness test considers whether the circumstances surrounding the passenger's purchase and retention of the ticket permitted him or her to become meaningfully informed of its contractual terms, taking into account factors such as the passenger's familiarity with tickets, the time and incentive to study the provisions of the ticket contract, and any other notice that the passenger received regarding the ticket contract provisions. *Walker*, 383 Ill. App. 3d at 134-35." *Zuniga*, 2021 IL App (1st) 201264, ¶¶ 33-34.

¶ 30    The Cubs assert that, although the media credential at issue is different from a purchased ticket, the contract principles underlying the reasonable communicativeness test should be applied here and warrant the conclusion that a contract was formed incorporating the terms and conditions of the media credential. The Cubs assert that the physical characteristics of the credential plainly communicated the existence of the terms and conditions by stating, "Bearer acknowledges receipt and review of, and agrees to be bound by, the further terms and conditions contained on the website of the Officer of the Commissioner of Baseball at MLBPressbox.com." The club points out that the media credential was not a ticket for one-time use. Rather, the plaintiff had possessed it for four months prior to the date of his injury, and, the Cubs argue, he had ample opportunity to access, read, and become familiar with the terms and conditions during that time. The Cubs further contend that the plaintiff had strong incentive to read and become familiar with the terms and conditions associated with the use of his media credential, because they largely involved the license agreement setting forth the terms and conditions upon which the plaintiff could take and make use of photographs for his professional work as an Associated Press photographer. Furthermore, the Cubs point out that the plaintiff does not state in his affidavit that he had not actually read or was unaware of the terms and conditions or the arbitration provision when he made use of the media credential.[2]

¶ 31    In response, the plaintiff points out that the front of the media credential does not contain any notice drawing attention to the importance of the terms and conditions set forth on the back or the effect that those terms and conditions purported to have on the user's legal rights. The

---

[2]The Cubs also assert in its brief that the plaintiff "had a 10-year contractual relationship with the Cubs, whereby each baseball season Plaintiff obtained media credentials, though his employment with the AP, to perform professional media services at Wrigley Field." We find no evidence in the record to support the assertion that the plaintiff's relationship with the Cubs in prior baseball seasons was one of contract. The record contains no evidence of the terms or conditions of any prior contract between the plaintiff and the Cubs and thus provides no basis upon which to conclude that the existence of a prior contract should have put the plaintiff on reasonable notice that a contract was being agreed to by his use of the media credential during the 2018 baseball season.

- 10 -

presence or absence of such a warning is a factor courts have looked to as part of the first prong of the reasonable communicativeness test. See *Walker*, 383 Ill. App. 3d at 135 (front cover of cruise ticket booklet, stating "IMPORTANT NOTICE TO GUESTS" and indicating that contract contained important limitations affecting rights of passengers, reasonably communicated existence of forum-selection clause); *O'Brien*, 17 F. Supp. 2d at 103 (absence of warning on front of ski-lift ticket was one reason court found it did not give adequate notice of forum selection clause). The plaintiff also asserts that the size of the print on the back of the credential was "tiny" and that the word "arbitration" is not mentioned anywhere on it. He points out that the Cubs could have done far more to give him reasonable notice of the fact that the club was seeking to bind him to an arbitration provision.

¶ 32    We conclude that the parties' arguments simply demonstrate that a genuine issue of material fact exists about whether the parties mutually assented to the terms of a contract in this context. The reasonable communicativeness test seems most often to be used in cases where it is unquestioned that a contract of some nature has been formed between the parties (*i.e.*, where a cruise, flight, or ski-lift ticket has been purchased from a provider of that service) and the issue is whether ticket terms were a part of that contract. As such, the question of whether terms and conditions printed on a ticket were reasonably communicated to the purchaser so as to become binding as part of that contract is treated as a question of law. *Hodes v. S.N.C. Achille Lauro ed Altri-Gestione*, 858 F.2d 905, 908 (3d Cir. 1988); *Walker*, 383 Ill. App. 3d at 135. This differs from the situation in this case. Here, we are dealing with the basic question of whether any contract at all was formed between the plaintiff and the Cubs. Thus, while the factors of the reasonable communicativeness test do appear relevant, in this circumstance they go to the factual questions involving contract formation and mutual assent and cannot be decided as a matter of law.

¶ 33    In its ruling, the trial court stated that it was denying the Cubs' motion to dismiss without prejudice. The court struck the requests to admit that the Cubs had issued to the plaintiff and ordered that, if discovery was needed, the Cubs must answer and may file a motion for summary judgment at the appropriate time. The trial court's denial of the motion to dismiss without prejudice was clearly proper, as the existence of genuine issues of material fact precluded dismissal in this circumstance. *One Fish Two Fish*, 2021 IL App (1st) 191441, ¶ 44.

¶ 34    The trial court's order also stated that it found this court's decision in *Zuniga* to be controlling authority in this case.[3] *Zuniga*, 2021 IL App (1st) 201264. *Zuniga* involved the doctrine of unconscionability, which is a defense to the enforcement of a contract or its terms. See *id.* ¶¶ 13-14. The defense of unconscionability cannot arise unless a contract is found to exist first. Because there is a genuine issue of fact about whether a contract exists at all here,

---

[3]We have some difficulty reconciling the trial court's statement that *Zuniga* is controlling authority with its denial of the motion to dismiss without prejudice and its order that the Cubs could pursue discovery and file a motion for summary judgment at the appropriate time. It would seem that if *Zuniga* controlled, that would mean that the arbitration provision had been found to be unconscionable and unenforceable, in which case the denial of the motion to dismiss and compel arbitration should have been with prejudice. Given that the trial court denied the motion without prejudice, allowed discovery, and contemplated the Cubs' filing of a motion for summary judgment in the future, we interpret the trial court's ruling to be that an enforceable arbitration provision had not been shown at that point but could be established in the future, after discovery had been obtained.

we conclude that we cannot reach the question of whether the arbitration provision is unconscionable.

¶ 35      Finally, the Cubs make a number of arguments involving the exact procedure to be employed in the trial court going forward. We decline to address these arguments, as they have not been ruled upon by the trial court. It is evident that the Cubs intend to pursue discovery into issues involving contract formation, but the exact scope or extent of the discovery to be done is not known to us. We therefore conclude that issues of procedure and the nature of the hearing that will be necessary to resolve the issues of contract formation are decisions best left to the discretion of the trial court.

¶ 36      III. CONCLUSION

¶ 37      For the foregoing reasons, the trial court's order denying the defendant's motion to dismiss is affirmed.

¶ 38      Affirmed.