NOTICE
Decision filed 02/20/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240210-U

NO. 5-24-0210

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| DANIEL C. GREENFIELD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 22-LA-660 |
| | ) | |
| ERVIN CABLE CONSTRUCTION, LLC; | ) | |
| JESSICA SLOW; NEXT GENERATION | ) | |
| COMMUNICATIONS, INC.; and DENNIS DECKER, | ) | |
| Individually and d/b/a Force Cable, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Ervin Cable Construction, LLC, and Jessica Slow, | ) | Sarah D. Smith, |
| Defendants-Appellants). | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice McHaney and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in denying the joint motion to compel arbitration filed by the defendants, Ervin Cable Construction, LLC and Jessica Slow, where the defendants failed to meet their burden to establish that the parties had a valid agreement to arbitrate.

¶ 2    The plaintiff, Daniel C. Greenfield, filed a complaint alleging defamation *per se* and/or tortious interference against Ervin Cable Construction, LLC (Ervin Cable), Jessica Slow, Next Generation Communications, Inc. (Next Gen), and Dennis Decker, individually and doing business as Force Cable (collectively Decker). Ervin Cable and Jessica Slow filed a joint motion to dismiss

1

or stay the proceedings and compel arbitration. The trial court denied the motion to compel arbitration. Ervin Cable and Jessica Slow appealed. For the following reasons, we affirm.

¶ 3                                            I. BACKGROUND

¶ 4       The plaintiff began working for Ervin Cable as a project supervisor in February 2013. Ervin Cable was in the business of providing cable construction and infrastructure services in the telecommunications industry, and Jessica Slow was a regional manager for the company. During the relevant period, Ervin Cable contracted some of the work on its projects to outside contractors, including Next Gen and Decker. Sometime prior to April 20, 2022, Next Gen and Decker purportedly informed Jessica Slow and other agents and employees of Ervin Cable that the plaintiff had repeatedly solicited money or other gifts from them in exchange for awarding contracts on Ervin Cable projects, and that he engaged in a pay-for-play arrangement with contractors. On April 20, 2022, Ervin Cable terminated the plaintiff's employment.

¶ 5       On May 24, 2022, the plaintiff filed a six-count complaint in the circuit court of Madison County arising from his termination. The plaintiff brought counts alleging defamation *per se* against Ervin Cable (count I), Jessica Slow (count II), Next Gen (count III), and Decker (count V), and counts alleging tortious interference against Next Gen (count IV) and Decker (count VI).

¶ 6                              A. The Motion to Compel Arbitration

¶ 7       On July 29, 2022, Ervin Cable and Slow filed a joint motion to dismiss or stay the proceedings and compel arbitration.[1] Therein, the defendants claimed that the plaintiff entered into an arbitration agreement with Ervin Cable on January 4, 2019. The defendants argued that the arbitration agreement was valid and enforceable, and that the plaintiff's defamation claims were

---

[1]There is no indication in the record before us that Next Gen and Decker joined in the motion to compel arbitration, and they have not participated in the proceedings on appeal. Thus, for purposes of clarity in this order, we will refer to Ervin Cable and Jessica Slow as "the defendants," and we will refer to Next Gen and Decker by name.

explicitly covered by and within the scope of the arbitration agreement. The defendants also argued that the arbitration agreement contained a delegation provision that gave the arbitrator exclusive authority to resolve any disputes related to the validity, enforceability, unconscionability, and waiver of the arbitration agreement.

¶ 8     The defendants attached a declaration from Jason Brazier, Ervin Cable's senior director of human resources,[2] in support of their motion to compel arbitration. In the declaration, Brazier outlined the general process through which the arbitration agreement at issue was provided to the plaintiff and other employees of the company. Brazier stated that the plaintiff was given a work email account when he began employment at Ervin Cable. The email account was secured by a unique, secret password created by the plaintiff. Brazier further stated that an email was sent to the plaintiff's work email address, via DocuSign, on January 3, 2019. The email directed the recipient "to review and sign the attached Arbitration Agreement on or before January 18, 2019." The email included a secure DocuSign link through which the plaintiff could securely access and sign the arbitration agreement. When the DocuSign link was clicked, a new page opened containing the arbitration agreement. The plaintiff could either scroll through the arbitration agreement online or he could download the document and print it for review. Brazier asserted that the plaintiff electronically signed the arbitration agreement, via DocuSign, on January 4, 2019. Brazier also asserted that upon execution of the agreement, DocuSign generated a "Certification of Completion" that accurately detailed the dates and times the plaintiff viewed and then executed the arbitration agreement. Copies of the email exhibit dated January 3, 2019, the arbitration agreement, and the Certificate of Completion were attached to Brazier's declaration.

---

[2]The Brazier declaration is a three-page document. The first page of the declaration is blurred, and the content is unreadable.

¶ 9    The email exhibit dated January 3, 2019, is a one-page document, with a 32-digit "Envelope ID" number printed at the top of the page. The exhibit identified the sender's name as "The Company," and the sender's email address as "no-reply@dycominc.com." The subject line provided: "ACTION: Please Sign This Arbitration Agreement." The emailed was directed to "Dear Employee," and it contained the following message: "Please review and sign the attached Arbitration Agreement on or before January 18, 2019." The email also included a notice that the email address was not monitored, and that the recipient should contact human resources with any questions. The exhibit indicated that the email message was created on "1/3/2019 1:57:01 PM (CST)" and sent on "1/3/2019 1:57:02 PM (CST)." The exhibit identified Daniel Greenfield as the intended recipient, and it indicated the email was delivered on "1/4/2019 8:41:26 AM (CST)" and completed on "1/4/2019 8:41:45 AM (CST)."

¶ 10    The Certificate of Completion contained the same 32-digit Envelope ID number as the email exhibit. It documented events using the eastern time zone. The Certificate of Completion indicated that the plaintiff viewed a document on January 4, 2019, at "9:41:26 AM," and that he "electronically signed" the document at "9:41:45 AM" that same date. The Certificate of Completion contained a section labeled, "Signer Events." The printed name and email address for the plaintiff, and a "pre-selected style" of cursive signature for "Daniel Greenfield," were displayed in that section.

¶ 11    The arbitration agreement is a three-page document. The same 32-digit Envelope ID number is printed on each page of the document. The first paragraph of the arbitration agreement is printed in bold font and provided:

"**This Arbitration Agreement is a contract and covers important issues relating to Your rights. It is Your sole responsibility to read it and understand it. You are free**

4

**to seek assistance from independent advisors of Your choice outside the Company or to refrain from doing so if that is Your choice.**"

¶ 12    Designated lines identifying the employee and the authorized representative of the company were provided at the bottom of the third page of the arbitration agreement. The name "Daniel Greenfield" is printed on the "employee name printed" line. The employee signature line does not contain the cursive signature depicted in the Certificate of Completion exhibit. It is not clear whether the employee signature line was left blank or whether a signature was redacted. "Brad Ervin, President" is printed on the line designated for the authorized representative of Ervin Cable. There is no signature line for the authorized representative.

¶ 13    An acknowledgement, printed in uppercase letters and boldface type, appears just above the signature lines:

> "**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ, UNDERSTAND, AND AGREE TO THIS ARBITRATION AGREEMENT. BY SIGNING THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT.**"

¶ 14    According to its terms, the arbitration agreement was governed by the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2024)), and the arbitration proceedings were to be administered by "the AAA," under the "then current Employment Arbitration Rules of the AAA." However, in the event of a conflict between the terms of the agreement and the AAA Rules, the terms of agreement governed. The arbitration agreement applied to "all claims or controversies, past, present, or future, that otherwise would be resolved in a court of law or before a forum other than arbitration," including claims or disputes arising out of or related to the termination of employment. Claims

"based upon or related to discrimination, harassment, retaliation, defamation (including postemployment defamation or retaliation)" came within the litany of contract, common law, and tort claims covered by the agreement. The arbitration agreement contained a delegation provision. This provision directed that the arbitrator, not the courts, "shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of the Agreement, including, but not limited to any claim that all or any part of the Agreement is void or voidable."

¶ 15    The plaintiff filed a response in opposition to the defendants' motion to compel arbitration, along with the plaintiff's supporting affidavit. In his response and accompanying affidavit, the plaintiff asserted that he had no memory of signing an arbitration agreement. The plaintiff stated that he did not know the meaning of "arbitration," and that his former employer, Ervin Cable, did not explain what an arbitration agreement was or the process of arbitration. The plaintiff also stated that when Ervin Cable requested that he sign a document, he was required to sign it. He was never given an opportunity to negotiate the terms of the document. Throughout his employment with Ervin Cable, the plaintiff did not recall being asked to sign an arbitration agreement, and he did not remember signing one. If he did sign the arbitration agreement at issue, he did so at his employer's request and "without having any idea" what he was signing. The plaintiff stated that he would never have voluntarily agreed to give up his rights to go to court and have a jury trial.

¶ 16    The plaintiff also claimed the arbitration agreement was procedurally and substantively unconscionable, and therefore unenforceable. In addressing procedural unconscionability, the plaintiff noted that during nearly six years of employment with Ervin Cable, he had never been asked to sign an arbitration agreement. The plaintiff again stated that he had no memory of seeing the email dated January 3, 2019, and no memory of seeing or signing the attached agreement. The

6

plaintiff argued that the agreement would have come out of the blue, and that he would have punched the correct buttons on his computer to "sign" it. If he signed the agreement, he did so because his employer demanded it, and he wanted to keep his job. The plaintiff also pointed to the email exhibit dated January 3, 2019, and argued that it contained a mandatory directive, and that he had no right to negotiate changes to the arbitration agreement or to decline to sign it. The plaintiff also argued that based on the times listed in the Certificate of Completion exhibit, the email would have been "viewed" at 9:41:26 a.m. and the attachment would have been signed at 9:41:45 a.m.—just 19 seconds later.

¶ 17    The plaintiff claimed that the agreement was substantively unconscionable because it required an employee to arbitrate claims against Ervin Cable, its parent company, and its affiliates and subsidiaries, while Ervin Cable was only required to arbitrate against the employee. The agreement also required the arbitration of claims arising from acts or omissions of the employer after the employment relationship had ended. In addition, the agreement severely limited discovery and required that the arbitrator be experienced in employment law, and not defamation. The plaintiff claimed that he would be required to split his action, arbitrating claims against Ervin Cable and Jessica Slow, while preparing for a trial against Next Gen and Decker.

¶ 18    In addition, the plaintiff claimed that the defendants waived their right to arbitration. The plaintiff argued that the defendants' actions in removing his case to federal court and presenting arbitrable issues to a federal judge were inconsistent with their right to demand arbitration and amounted to waiver.[3]

---

[3]Pursuant to the plaintiff's motion, the federal court remanded the case to the circuit court based upon a lack of diversity of citizenship. The federal court did not rule on any other motions.

¶ 19    In reply, the defendants initially argued the plaintiff had not specifically challenged the validity or enforceability of the delegation clause. Addressing the unconscionability claims, the defendants argued that the plaintiff had been given ample time to review the arbitration agreement, to ask questions about its meaning and its terms, and to consult with an attorney. The plaintiff had chosen not to do so. The defendants claimed that the terms of the arbitration agreement were equally applicable to the plaintiff and the defendants, that limitations on discovery were "inherent" in arbitration, and that additional discovery could be obtained through a stipulation or in the discretion of the arbitrator. In addition, the defendants rejected the plaintiff's contention that they acted inconsistently with their right to compel arbitration.

¶ 20    The defendants filed a declaration by Steve Scheffer along with their reply. Scheffer's declaration was "DocuSigned," and dated September 16, 2022. At that time, Scheffer was the human resources director for Ervin Cable. In the declaration, Scheffer asserted that in December 2018, Ervin Cable began to communicate with its employees about the rollout of an arbitration agreement. Scheffer stated that he sent an email to all employees in January 2019. Scheffer then described the information he had included in his email. Scheffer notified the employees that they would receive an email from "no-reply@dycominc.com" asking them to review and sign the agreement. Scheffer explained that by entering into the agreement, the employee and the company would be required to resolve most disputes related to their employment via arbitration rather than in the courts. He also explained that the company believed that arbitration would provide a more efficient forum for a fair and quick resolution of disputes and that claimants would be entitled to the same remedies that would be available in the courts. Scheffer indicated that he closed his email by directing employees to contact him if they had any questions regarding the agreement. The

8

plaintiff did not contact him with questions or concerns about the agreement. The Scheffer email was not attached to Scheffer's declaration.

¶ 21    The plaintiff filed an amendment to his previous response in opposition to the motion to compel arbitration. Therein, the plaintiff stated that he specifically opposed the "delegation clause" in the arbitration agreement on all grounds argued in his response in opposition, and he incorporated by reference those arguments in opposition to the delegation clause.

¶ 22                                B. The Evidentiary Hearing

¶ 23    On August 21, 2023, the trial court held an evidentiary hearing on the factual disputes related to the motion to compel. The court directed the plaintiff to proceed first.

¶ 24    The plaintiff, then 57 years, testified that he began working as a project supervisor for Ervin Cable in February 2013. He worked on projects involving the replacement of mainline fiberoptic cable. The plaintiff acknowledged that his employer provided a work email account secured by a private password, and that he received emails from his employer on his work devices and cell phone. He noted that he supervised workers at the job sites, and so he was only at a computer when invoicing. The plaintiff testified that he received emails periodically from his employer directing him to sign documents via "DocuSign." Employees were required to sign the DocuSign documents or face termination or other discipline.

¶ 25    The plaintiff had a high school education. He had no experience, education, or training in legal issues, and he had never heard of arbitration before this case. The plaintiff testified that he was not notified that Ervin Cable planned to institute an arbitration program. He received no information or training on the process of arbitration. He did not recall receiving an email from his employer asking him to agree to arbitration and explaining that he would be giving up his right to go to court to resolve disputes with his employer if he agreed to arbitrate. If this had been

9

explained, he would never have agreed to it. Further, he would never have agreed that an arbitrator, rather than a judge, would decide whether the arbitration agreement was valid. The plaintiff, to the best of his memory, did not agree to arbitrate disputes between himself and his employer.

¶ 26    During cross-examination, the plaintiff agreed it was important to read emails and attachments sent by his employer. He did not ignore work emails or attachments, but there were times when he did not see an attachment. The plaintiff had no recollection of receiving an email from Steve Scheffer, explaining the upcoming arbitration agreement. He stated that it was "possible" that he did receive it. At that time, his work was extremely busy, and he sometimes missed an attachment to an email. He noted that he was responsible for assigning crews to several job sites and overseeing the work at those sites. The plaintiff was asked to review the email exhibit dated January 3, 2019, and the arbitration agreement at issue. The plaintiff testified that he did not recall receiving the email dated January 3, 2019, and he did not recall receiving or reading the arbitration agreement at issue. The plaintiff also reviewed a copy of the Certificate of Completion. The plaintiff testified that the signature depicted in the Certificate of Completion exhibit was not his actual signature, and that he did not remember creating the signature displayed in that document. Based upon the email exhibit and the Certificate of Completion, the plaintiff indicated that "evidently," he clicked the button to electronically sign the arbitration agreement, via DocuSign. He reiterated that he had no recollection of signing the arbitration document. The plaintiff explained that if an employee failed to sign a DocuSign document that the company sent, the employee's name would be placed on a list and the employee would be told that he had until a certain date and time to sign the document. He noted that his project manager, Chris Brewer, made it clear that if the employee did not sign a document, the employee would be terminated. The plaintiff heard this "plenty of times," and "that's what made the process very quick."

10

¶ 27    The plaintiff offered no additional evidence. The trial court then directed the defendants to present their evidence.

¶ 28    Jason Brazier was the sole witness for the defendants. At the time of the hearing, Brazier was the senior director of human resources at Ervin Cable. His duties included educating employees about employee benefits and employment policies. Brazier testified that Ervin Cable had approximately 1700 employees at the time arbitration was instituted. He noted that the company regularly communicated with its employees via email because of the large number of employees. Employees were provided with email accounts on the first day of work, and they were required to create a secure password and security questions for those accounts. Brazier noted that the company sent documents, such as payroll items and performance reviews, to employees for signatures via DocuSign. If Brazier learned that an employee was not reading emails and signing documents sent by his department, he or Steve Scheffer would call the employee or the employer's supervisor to find out why the employee had not responded.

¶ 29    Brazier also offered testimony about how the company notified employees of the arbitration agreement. In December 2018, the human resources department at Ervin Cable determined that DocuSign was the best method for sending the arbitration document to the employees for their electronic signature and getting a receipt of completion in return. In early January 2019, Steven Scheffer, then director of human resources, sent an email to the employees, instructing them to look for an email with the arbitration agreement. Brazier testified that he also received the Scheffer email. He recalled that the Scheffer email included an explanation of the arbitration agreement. Shortly after Scheffer sent his email, the company sent a second email to all employees with the arbitration agreement attached. The company email requested the employees to electronically sign the agreement and return it by January 18, 2019. If an employee

11

did not sign the agreement, Scheffer or someone from human resources contacted the employee. Brazier was not aware of any employee being pressured to sign the arbitration agreement or being disciplined for not signing it. He was not aware of any instance in which Chris Brewer told employees that they would be fired if they did not sign the agreement.

¶ 30   During cross-examination, Brazier acknowledged that he did not meet with any of the employees regarding the arbitration agreement, and he had no firsthand knowledge of what Scheffer might have said to employees who did not sign the agreement. Brazier testified that there were approximately 25 employees who did not sign the agreement, and those individuals were still employed at Ervin Cable. Brazier noted that Scheffer was semi-retired, and that he worked part-time for the company as a human resources specialist. Brazier testified that he searched for the Scheffer email, but he was unable to locate it.

¶ 31   At the close of the testimony, the trial court took the matter under advisement. In a written order filed January 8, 2024, the trial court denied the defendants' motion to stay or dismiss the proceedings and compel arbitration. The court initially addressed the issue of whether the plaintiff signed the arbitration exhibit, focusing on the circumstances surrounding the dissemination of the arbitration agreement. The court noted that the defendants offered testimony indicating that Steve Scheffer sent out an email in January 2019, before the email dated January 3, 2019, to inform employees about the nature and extent of an arbitration agreement, but the defendants never produced the Scheffer email. The court found that the Scheffer email was an important piece of evidence, and that it was "problematic" that no one from Ervin Cable could locate that document. The court noted that the plaintiff had worked at Ervin Cable for four or five years prior to January 2019, without an arbitration agreement, and that he did not recall signing an agreement in January 2019. The court also noted that the plaintiff had testified that he was required to sign documents

12

sent by management or face repercussions. The court found while there was evidence that the arbitration agreement bore plaintiff's digital signature, the evidence also suggested that the email with the attached arbitration agreement was opened at 9:14:26 a.m. and electronically signed approximately 19 seconds later. The court next turned to the issue of unconscionability and found that both the arbitration agreement and its delegation clause were procedurally and substantively unconscionable, and therefore unenforceable. This appeal followed.

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, the defendants claim that the trial court erred in denying their motion to compel arbitration. The defendants contend that the trial court erred in deciding the issue of unconscionability where there was no dispute that the parties entered into an arbitration agreement and that the agreement clearly and unmistakably delegated questions of unconscionability to the arbitrator. The defendants argue, in the alternative, that if the trial court did not err in considering the question of unconscionability, then the court erred in finding that the arbitration agreement was unconscionable.

¶ 34    This is an appeal from the trial court's denial of the defendants' motion to dismiss or stay the proceedings and compel arbitration. An order granting or denying a motion to compel arbitration is injunctive in nature and appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001).

¶ 35    Initially, we address the standard of review. A standard of review applies to an individual issue, not to an entire appeal. *Redmond v. Socha*, 216 Ill. 2d 622, 633 (2005). The applicable standard of review is determined by the nature of the question presented, not by the supreme court rule under which the appeal is brought. *LAS, Inc. v. Mini-Tankers, USA, Inc.*, 342 Ill. App. 3d 997, 1001 (2003). Thus, the applicable standard of review in an interlocutory appeal of a denial of a

13

motion to compel arbitration is dictated by the nature of the issue decided in the trial court. *Brown v. Delfre*, 2012 IL App (2d) 111086, ¶ 10. In this case, the trial court made factual findings and legal determinations in ruling on the motion to compel arbitration. The trial court conducted an evidentiary hearing on contested factual issues related to contract formation, and the court's factual findings will only be reversed if they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002). A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, and not based on the evidence presented. *Eychaner*, 202 Ill. 2d at 252. The trial court also determined that the arbitration contract and its delegation clause were unconscionable. Questions regarding the construction of a contract and questions about the unconscionability of a contract or one of its provisions present questions of law that are reviewed *de novo*. *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 22 (2006); *Delfre*, 2012 IL App (2d) 111086, ¶ 11.

¶ 36 Procedurally, this appeal involves the denial of the defendants' motion to dismiss or stay the proceedings under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2022)). Section 2-619(a)(9) allows for a dismissal of a claim or other appropriate relief, such as a stay of the proceedings, where the claim is barred by an affirmative matter that avoids the legal effect of or defeats a claim. 735 ILCS 5/2-619(a)(9) (West 2022). A motion to compel arbitration and stay the proceedings is essentially a section 2-619(a)(9) motion to stay an action in the trial court based on an affirmative matter—the exclusive remedy of arbitration. *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 21; *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002). The moving party has the initial burden to establish that the parties have a valid agreement to arbitrate, and that the controversy falls within the scope of the arbitration agreement. *Sturgill*, 2016 IL App (5th) 140380,

14

¶ 22. In ruling on a section 2-619 motion based on an affirmative matter, the trial court must construe all pleadings and supporting documents in a light most favorable to the nonmoving party. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004). The trial court's ruling on a section 2-619 motion is reviewed *de novo*. *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, ¶ 16. This court reviews the judgment, not the reasoning of the trial court, and we may affirm on any ground in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 37    The arbitration agreement at issue is governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2024)). Under the FAA, state courts and federal courts are authorized to stay an action and compel arbitration upon being satisfied that the issue involved in the action or proceeding is referrable to arbitration under a written agreement to arbitrate. See 9 U.S.C. §§ 2, 3 (2024).[4] Section 2 of the FAA provides that a written provision in a contract to settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2024). The FAA reflects the fundamental principle that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Like any other contract, an arbitration agreement is a matter of consent, not coercion. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478-79 (1989). Arbitration is a way to resolve disputes, but only those

---

[4]In *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024), the United States Supreme Court recently held that when a federal court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA (9 U.S.C. § 3 (2024)) compels the court to stay the judicial proceedings pending arbitration, and the court does not have the discretion to dismiss the action. The Supreme Court found that the plain text, structure, and purpose of § 3 requires the court to stay the proceedings and that staying rather than dismissing the action comports with the supervisory role that the FAA envisions for the courts.

disputes that the parties have agreed to arbitrate. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

¶ 38　Parties can agree to send the merits of a dispute to the arbitrator. Parties can also delegate gateway arbitrability questions to the arbitrator, so long as the parties' agreement does so by "clear and unmistakable" evidence. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *First Options*, 514 U.S. at 944. To be clear, before referring a dispute for arbitration, the court must first determine whether a valid arbitration agreement exists. See 9 U.S.C. § 2 (2024); *Henry Schein*, 586 U.S. at 69. If a valid agreement exists, and if the agreement delegates issues of arbitrability to an arbitrator, a court may not decide the arbitrability issues. *Henry Schein*, 586 U.S. at 69.

¶ 39　When a dispute concerns the formation of a contract, the dispute is generally for the court to decide. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010). State law principles of contract formation determine whether a contract exists between the parties. *First Options*, 514 U.S. at 944.

¶ 40　The existence of a contract, its terms, and the parties' intent are questions of fact to be determined by the factfinder. *Arbogast*, 2021 IL App (1st) 210526, ¶ 20. Under Illinois law, an offer, acceptance, and consideration form the basic ingredients of a contract. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006); *Arbogast*, 2021 IL App (1st) 210526, ¶ 20. An enforceable contract must also include a meeting of the minds or mutual assent as to the terms of the contract. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). Whether parties have mutually assented to a contract is a question of fact that is determined by an objective standard. *Arbogast*, 2021 IL App (1st) 210526, ¶ 20. It is not necessary that the parties share the same subjective understanding as to the contract's terms, as it suffices if their conduct objectively indicates an

16

agreement to the terms of the purported contract. *Academy Chicago Publishers*, 144 Ill. 2d at 30. Only overt acts and communications between the parties may be considered in determining whether and upon what terms they have entered into a contract. *Arbogast*, 2021 IL App (1st) 210526, ¶ 20. Mutual assent may be shown through a signature on a contract. *Arbogast*, 2021 IL App (1st) 210526, ¶ 21. A party who has signed a contract is charged with knowledge of and assent to the terms of the contract. *Melena*, 219 Ill. 2d at 150. In addition, a party may, by its acts and conduct, indicate assent to the terms of a written contract and to be bound by its provisions, even if the party did not sign the agreement. *Arbogast*, 2021 IL App (1st) 210526, ¶ 21.

¶ 41    In this case, the trial court was required to decide whether there was a valid agreement to arbitrate. The defendants claimed that the plaintiff signed the agreement, via DocuSign, on January 4, 2019. The plaintiff did not concede that issue. The plaintiff claimed that he had no memory of either receiving or signing the document. In addressing this issue, the trial court considered the circumstances surrounding the dissemination of the arbitration agreement and whether there was mutual assent. After considering the testimony and the documentary evidence in the record, the trial court identified several factual shortcomings in the defendants' proofs. In the order, the court noted that Jason Brazier, Ervin Cable's senior director of human resources, testified that Steve Scheffer sent out an email in January 2019 to inform the employees about the arbitration agreement and to explain the arbitration process. The Scheffer email was purportedly sent to all employees in advance of the January 3, 2019, email containing the arbitration agreement. Its purported purposes were to notify employees to look out for an email with an arbitration agreement and to inform employees about the arbitration process. However, the defendants were unable to produce the Scheffer email. Brazier testified that he searched for the email but was unable to locate it. Scheffer was not called as a witness. Although Scheffer provided a declaration in which he made

representations regarding the content of the email, the email was not produced with his declaration. The plaintiff testified that he did not recall receiving the Scheffer email. He also testified that he was unfamiliar with arbitration and that the company never explained the arbitration process. The court found it problematic that no one from Ervin Cable was able to locate such an important document relating to the case.

¶ 42    The court also noted that the defendants presented testimony indicating that an email dated January 3, 2019, containing the attached arbitration agreement, was sent to the plaintiff's work email account on January 3, 2019, and that the attached document was opened and electronically signed on January 4, 2019. The Certificate of Completion indicated that the email was viewed at 9:14:26 a.m., and that the attached DocuSign document was electronically executed approximately 19 seconds later. The plaintiff testified that he had no recollection of receiving the email or the attachment and no recollection of signing the arbitration agreement at issue. The plaintiff also testified that the company periodically sent out DocuSign documents for signature, that there was no negotiation of those documents, and that employees were required to sign them. He explained that the project manager made it clear that employees would be terminated if they did not sign them. The arbitration agreement at issue was included as an exhibit in the record on appeal. There is no signature on the employee signature line in that document. Whether a signature was redacted or whether the signature line was left blank is unknown. The Certificate of Completion contains a "pre-selected" digital signature for "Daniel Greenfield," but the plaintiff testified that he had no recollection of creating that signature. Thus, there was conflicting and inconclusive evidence regarding whether the plaintiff signed the arbitration agreement at issue.

¶ 43    In this case, the defendants filed the motion to compel arbitration, and they had the burden to demonstrate that the plaintiff assented to an offer to arbitrate. Although not expressly stated, the

18

trial court's factual findings reveal a failure of proof on the issue. Taking the evidence and reasonable inferences in the light most favorable to the plaintiff, the trial court could reasonably find that the defendants failed to meet their burden to show that the plaintiff assented to the arbitration agreement and its delegation provision. Without plaintiff's assent, the defendants failed to establish a valid agreement to arbitrate. Based upon the record before us, we conclude that the trial court's factual findings are not against the manifest weight of the evidence, and that the trial court did not err in finding that the defendants failed to establish a valid agreement to arbitrate.

¶ 44 The defendants also claim the trial court erred in finding that the arbitration agreement and its delegation clause were procedurally and substantively unconscionable. Unconscionability is a defense to the enforcement of a contract or its terms. Procedural unconscionability generally consists of some impropriety during the process of forming the contract that deprives a party of meaningful choice. See *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 100 (2006); *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989 (1980). Consequently, many of the trial court's findings on the issue of mutual assent would also apply to the issue of procedural unconscionability. Nevertheless, the defendants failed to establish a valid agreement to arbitrate, and so we need not address the arguments regarding the unconscionability defense.

¶ 45 III. CONCLUSION

¶ 46 The defendants failed to meet their burden to establish a valid agreement to arbitrate. Accordingly, the trial court's decision to deny the defendants' motion to compel arbitration is affirmed.

¶ 47 Affirmed.

19